Wallace, Circuit Judge.
This is an application to enforce an order of the interstate commerce commission, made January 29, 1891, in a proceeding instituted by the New York Board of Trade & Transportation. The petition in that proceeding complained of unjust discrimination made by various railway carriers'. The defendant was duly notified of the complaint, and appeared in the proceeding, and submitted its rights. It was shown to the commission, as appears by the findings of fact in their report, that the defendant, in conjunction with the’Southern Pacific Company, made joint rates from New Orleans to San Francisco covering carriage of traffic by the rails of the defendant from New Orleans to El Paso, and thence by the rails of the Southern Pacific Company to San Francisco, and also made joint rates with vessel owners in London and Liverpool covering carriage of traffic from those places to San Francisco via New Orleans. It was also shown that the ordinary tariff rates charged by the two companies upon traffic delivered to the defendant at New Orleans, and shipped at New York, Chicago, and other places in this country, for carriage from New Orleans to San Francisco, were somewhat more than double the rates charged for carriage of similar traffic sent from Liverpool or London by through bill of lading to San Francisco via New Orleans. To illustrate, it was shown that the rates made by the two companies, in conjunction with Liverpool vessel owners, by through bill of lading from Liverpool .to San Francisco via the' rails of the defendant from New Orleans to El Paso, were, per 100 pounds, on books, on carpets, and on cutlery, §1.07, *188 while the regular tariff rates of the two companies upon the articles when sent to New Orleans from other places in this county were, per 100 pounds, on books, $2.64, on carpets, $2.88, and on cutlery, $8.26; and that the rates on these articles, when shipped from Liverpool, were 80 cents per 100 pounds for carriage from New Orleans to San Francisco.
The defendant contended that it was justified in making the discrimination between the foreign and domestic traffic, because, owing to the competition of sailing vessels and foreign carriers between Liverpool and San Francisco, it could not get any appreciable amount of foreign traffic without meeting the competitive rates by making the rates given. The commission, while conceding the facts to be as asserted by the defendant, ruled against the validity of the excuse, and made an order which, in substance, required the defendant to desist from carrying any article of imported traffic, shipped from any foreign port upon through bills of lading, destined to any place within the United States, at any other than the same rates established by the inland tariff of the defendant for the carriage of other like kind of traffic. It is admitted by the answer of the defendant that since the order of the commission was made it has maintained a substantially similar disparity in its transportation rates for these articles, as well as in those for the transportation of numerous other articles, depending upon the foreign or domestic origin of the shipment. The defendant insists that its action in this regard is not prohibited by the provisions of the interstate commerce act, and that, as it has not been guilty of any unjust discrimination, within the meaning of that act, the order of the commission ought not to be enforced. It also insists that the proceeding is defective, because the Southern Pacific Company is not made a party to the defense.
If the order made by the commission was a lawful one, I see no reason why the defendant should not be compelled to obey it, notwithstanding- the Southern Pacific Company is not at present pursued. If the defendant is violating a proper order of the commission, it should be restrained from doing so; and it cannot escape upon the objection that another wrongdoer is also violating it. The real question, as it seems to me, is whether the existence of the peculiar facts which were relied upon before the commission by the defendant as an excuse for its discrimination justifies its conduct. It must be conceded as true, for the purposes of the present case, that the rates for the transportation of traffic from Liverpool and London to San Francisco are, in effect, fixed and controlled by the competition of sailing vessels between those ports, and also by the competition of steamships and sailing vessels in connection with railroads across the Isthmus of Panama, none of which are in any respect subject to the act to regulate commerce. It must also be conceded that the favorable rates given to the foreign traffic are, for reasons to which it is now unnecessary to advert, somewhat remunerative to the defendant; and it must also be conceded that the defendant would lose the foreign traffic by reason of the competition referred to, and the revenue derived therefrom, unless it carries it at the lower rates; and by doing so it is enabled to get part of it, which would otherwise go from *189 London and Liverpool to San Francisco around the Horn or by the Isthmus of Panama.
The case presents a question of much interest and importance to the defendant and carriers similarly situated, .and also to our own merchants and manufacturers, who, in supplying the wants of consumers at places within the United States, have to meet the competition of foreign merchants and manufacturers, and are placed at a serious disadvantage if they are compelled by the railway carriers to pay higher rates of transportation upon their goods. The question does not, however, seem to be such a doubtful one as to require more than a brief statement of the conclusions reached. The second section of the interstate commerce act prohibits unjust discrimination, and declares that the common carrier charging a greater or less compensation for any services rendered in the transportation of passengers or property than it charges any other person for doing a like and contemporaneous service in the transportation of a “like kind of traffic under substantially similar circumstances and conditions” shall be deemed guilty of unjust discrimination. The third section provides that it shall be unlawful for the carrier to make or give any undue or unreasonable preference or advantage to any particular person, locality, or particular description of traffic in any respect whatsoever, or to subject any particular person or locality, or any particular description of traffic, to any undue and unreasonable prejudice or disadvantage in any respect whatsoever. The third section is substantially taken from the second section of the English act of parliament known as the “Railway & Canal Traffic Act of 1854.” Either section is sufficiently comprehensive in its terms to prohibit an interstate carrier from making an unfair discrimination between different shippers in charges for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions. But neither section is intended to prohibit all discriminations or preferences. In considering whether an undue discrimination has been made, the fair interests of the carrier are to be taken into account, and, although lower rates are given to one shipper or class of shippers than to another for carrying the same kind of traffic, the latter have no just ground of complaint of unjust discrimination if the conditions of the service enable the carrier to take the traffic of the former at a less cost. Nor is the discrimination unjust if made conformably to some agreement by which the favored shipper gives the carrier an adequate consideration for the reduced rates. Upon this principle it was decided not to be an unjust preference under the English act for a railway company to carry at a lower rate in consideration of a guaranty of large quantities and full train loads at regular periods, provided the real object of the company was to obtain thereby a greater remunerative profit by the diminished cost of carriage, although the effect might be to exclude from the lower rate those shippers who could not give such a guaranty. Nicholson v. Great Western Ry. Co., 5 C. B. (N. S.) 366. The discrimination between different, shippers is a lawful one if it is such as the carrier may fairly give because of the difference in cost, expense, or the *190 exceptional character of the service. U. S. v. Delaware, L. & W. R. Co., 40 Fed. Rep. 101.
Prior to the enactment of the interstate commerce act the courts were of the opinion that discriminations by railway carriers in the rates of freight charged to shippers, based solely on the ground of the quantity of freight shipped, without reference to any conditions tending to decrease the cost of transportation, were contrary to sound public policy, and inconsistent with the obligations of such carriers to the public. John Hays & Co. v. Pennsylvania Co., 12 Fed. Rep. 309; Burlington Co. v. Northwestern Fuel Co., 31 Fed. Rep. 652. It might well be that shippers would be induced to increase their traffic with a carrier by the offer of such discrimination, perhaps by withdrawing part of it from a rival carrier, perhaps by stimulating the shipper to enlarge his business operations; and thus the discrimination might be profitable to the carrier. The English courts, in cases arising under the English traffic act, have held that preferences given to particular shippers to induce them not to divert traffic from the carrier, or to induce them to transfer traffic to one carrier which otherwise would go to another carrier, are unlawful, and cannot be justified on the ground of profit to the carrier allowing them. Harris v. Cockermouth & Workington Ry. Co., 3 C. B. (N. S.) 693; Evershed v. London & Northwestern Ry. Co., 2 Q. B. Div. 254. In the first of these cases the judges in their opinion pointed out that, if they were to justify a discrimination upon such reasons, a railway company might in any case grant a preference to one person over another, provided it acted bona fide in the belief that such a course would be to its advantage. In the second case the court, in pronouncing against the validity of the justification, used this language:
“We think that a railway company cannot, merely for the sake of increasing their traffic, reduce their rates in favor of individual customers, unless, at all events, there is a sufficient consideration for the reduction, which shall lessen the cost to the company of the conveyance of their traffic, or some other equivalent or other services are rendered to them by such individuals in relation to such traffic. ”
The interstate commerce act would be emasculated in its remedial efficacy, if not practically nullified, if a carrier can justify a discrimination in rates merely upon the ground that, unless it is given, the traffic obtained by giving it would go to a competing carrier. A shipper having a choice between competing carriers would only have to refuse to send his goods by one of them unless given exceptional rates to justify that one in making the discrimination in his favor on the ground of the necessity of the situation. The order is granted.